Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JERRY BEAVEE,<br><br>                Plaintiff,<br><br>    vs.<br><br>ACER THERAPEUTICS INC., STEVE ASELAGE, JASON AMELLO, JOHN M. DUNN, MICHELLE GRIFFIN, and CHRIS SCHELLING,<br><br>                Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Jerry Beavee ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action against Acer Therapeutics Inc. ("Acer" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of

Defendants' efforts to sell the Company to Zevra Therapeutics, Inc. ("Parent") through merger vehicle Aspen Z Merger Sub, Inc., a wholly owned subsidiary of Parent ("Merger Sub" and collectively with Parent, "Zevra"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all-stock merger transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an August 31, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Acer's common stock will be converted into the right to receive 0.121 shares of Parent common stock as well as a non-transferable contingent right value ("CVR") which will pay out cash based upon the Company reaching certain milestones in the future.  The Proposed Transaction is valued at up to an approximate aggregate of $91 million, however only $15 million of that figure is made up of fully guaranteed merger consideration. As a result of the Proposed Transaction, Acer will become a wholly owned subsidiary of Parent.

3.      Thereafter, on September 29, 2023, in support of the Proposed Transaction, the Company and Zevra caused to be filed with the SEC a Form S-4 attaching the Registration Statement.  The Registration Statement was thereafter amended on October 6, 2023 through the filing of an S-4/A (the "Registration Statement").

4.      The Proposed Transaction is unfair for a number of reasons.  Notably, the Proposed Transaction reveals that the vast majority of the potential merger consideration is in the form of a non-guaranteed CVR payment.

5.      The Registration Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed

below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Acer and Zevra, provided by Acer management to the Board and the Board's financial advisor William Blair & Company, LLC ("William Blair") and Zevra's financial advisor Canaccord Genuity LLC ("Canaccord"); and (d) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion(s) created by William Blair and Canaccord, if any, provided to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of Oregon and, at all times relevant hereto, has been an Acer stockholder.

8.      Defendant Acer operates as a pharmaceutical company, focusing on the acquisition, development, and commercialization of therapies for serious rare and life-threatening diseases. Acer is incorporated in Delaware and has its principal place of business at One Gateway Center (300 Washington St.) Suite 356, Newton, MA 02458.  Shares of Acer common stock are traded on the NASDAQ Exchange under the symbol "ACER".

9.      Defendant Steve Aselage ("Aselage") has been a Director of the Company at all relevant times and serves as Chairman of the Company Board.

10.      Defendant Jason Amello ("Amello") has been a director of the Company at all relevant times.

11.      Defendant John M. Dunn ("Dunn") has been a director of the Company at all relevant times.

12.     Defendant Michelle Griffin ("Griffin") has been a director of the Company at all relevant times.

13.     Defendant Chris Schelling ("Schelling") has been a director of the Company at all relevant times, is the Company Founder, and serves as the Company's Chief Executive Officer ("CEO").

14.     Defendants identified in ¶¶ 9 - 13 are collectively referred to as the "Individual Defendants."

15.     Non-Party Parent is a rare disease company melding science, that discovers and develops various proprietary prodrugs to treat serious medical conditions in the United States. Parent is incorporated in Delaware and has its principal place of business at 1180 Celebration Boulevard, Suite 103, Celebration, FL 34747.  Shares of Parent common stock are traded on the NASDAQ Exchange under the symbol "ZVRA".

16.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

18.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as

to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

20.     Defendant Acer is a pharmaceutical company that focuses on the acquisition, development, and commercialization of therapies for serious rare and life-threatening diseases.

21.     The Company's pipeline includes four clinical-stage candidates comprising EDSIVO for the treatment of vascular Ehlers-Danlos Syndrome in patients with a confirmed type III collagen mutation; ACER-801 for the treatment of induced Vasomotor Symptoms, post-traumatic stress disorder, and prostate cancer; and OLPRUVA, a formulation of sodium phenylbutyrate for the treatment of various inborn errors of metabolism, including urea cycle disorders and maple syrup urine disease.

22.     Acer has a license agreement with Sanofi to acquire worldwide rights to Osanetant, a clinical-stage, selective, and non-peptide tachykinin NK3 receptor antagonist; an option agreement with Relief for the development, regulatory approval, and commercialization of OLPRUVA; and an agreement with Emory University to acquire the worldwide intellectual property rights to a family of patents and patent applications related to the use of neurokinin receptor antagonists in managing conditioned fear and treating anxiety disorders, including post-traumatic stress disorder.

23.     The Company's recent financial results from the quarter preceding the announcement of the Proposed Transaction indicate sustained and solid financial and pipeline performance.  For example, in the report of the 2023 Q2 financial results dated August 14, 2023, the Company highlighted such pipeline milestones as: OLPRUVA™ kits being available in all dosage strengths and ready to ship to patients.

24.     Speaking on these positive results, Defendant and CEO Chris Schelling commented on the Company's positive results and readiness to begin shipping its flagship product, "The second quarter of 2023 marked continued progress for Acer as we execute on our OLPRUVA™ launch strategy."

25.     Defendant Schelling continued, "We are pleased to offer OLPRUVA™ in the U.S. to certain UCD patients as a novel alternative option to current treatments that was specifically designed for palatability and convenience. With OLPRUVA™ kits now available in all dosage strengths, we are committed to supporting patients from initial prescription to support throughout the treatment process and look forward to making OLPRUVA™ available to patients in need."

26.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Acer.

27.     Despite this upward trajectory, the Individual Defendants have caused Acer to enter into the Proposed Transaction without providing requisite information to Acer stockholders such as Plaintiff.

***The Flawed Sales Process***

28.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual

Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29.     Notably, the Registration Statement fails to provide an adequate explanation as to why the vast majority of the merger consideration offered to Acer stockholders such as Plaintiff is in the form of a non-guaranteed CVR.

30.     Additionally, the Registration Statement fails to indicate why the Board agreed to a Proposed Transaction that did not include a collar mechanism to ensure that the merger consideration remains in a range of reasonableness.

31.     The Registration Statement also fails to disclose whether a committee of disinterested directors was formed to review the Proposed Transaction and if so, the identity of the directors who sat on said committee and what powers the committee had to evaluate the transaction, including whether the committee was empowered to veto a potential transaction not in the best interests of shareholders. On the other hand, if a committee was not formed, the Registration Statement fails to adequately disclose why a committee of disinterested directors was not formed.

32.     Finally, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Zevra, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

34.     On August 31, 2023, Acer and Zevra issued a press release announcing the

Proposed Transaction.  The press release stated, in relevant part:

> **Celebration, FL and Newton, MA – August 31, 2023** – Zevra Therapeutics, Inc.
> (NasdaqGS: ZVRA) ("Zevra"), a rare disease company melding science, data and
> patient need to create transformational therapies for diseases with limited or no
> treatment options, and Acer Therapeutics Inc. (Nasdaq: ACER) ("Acer"), a
> pharmaceutical company focused on development and commercialization of
> therapies for rare and life-threatening diseases, today announced the companies
> have entered into a definitive agreement pursuant to which Zevra would acquire
> Acer in a merger transaction having a total potential value for Acer stockholders of
> up to $91 million, consisting of (i) approximately 2.96 million shares of Zevra
> common stock valued at $15 million, or 0.121 shares of Zevra's common stock per
> share of Acer common stock based on the volume weighted average trading price
> (VWAP) of shares of Zevra's common stock during the 20 consecutive trading days
> ending on the trading date prior to today, and (ii) up to an additional $76 million in
> a series of potential cash payments pursuant to non-transferable Contingent Value
> Rights (CVRs) upon achievement of certain commercial and regulatory milestones
> for Acer's OLPRUVA (sodium phenylbutyrate) and Acer's EDSIVO (celiprol)
> within specified time periods. Certain additional cash payments are also possible
> pursuant to the CVRs with respect to milestones involving Acer's early-stage
> program ACER-2820 (emetine), as described further below. Zevra has also
> purchased Acer's secured debt at a discount from Nantahala Capital (Nantahala)
> through a series of transactions in capital efficient structure. In addition, Zevra has
> agreed to provide Acer with a bridge loan facility for up to $16.5 million, subject
> to certain terms and conditions. Both companies are deeply committed to
> developing and commercializing treatments for rare diseases with a strong focus on
> patients and remain dedicated to supporting communities with little or no existing
> therapeutic options. The merger is expected to expand Zevra's rare disease
> portfolio, as well as increase and diversify its revenues with the addition of a U.S.
> commercial asset, OLPRUVA, indicated for the treatment of UCDs. The
> transaction is subject to certain customary closing conditions, including, but not
> limited to, approval by Acer's stockholders.
>
> "We believe that Acer's portfolio of rare disease programs, including the recent
> U.S. commercial approval of OLPRUVA for UCDs, is a perfect strategic fit for
> Zevra and creates significant opportunity for us to positively impact patient lives
> while creating shareholder value," said Joshua Schafer, Chief Commercialization
> Officer and Executive Vice President of Business Development of Zevra
> Therapeutics. "We are excited about Acer's clinical programs and are confident in
> the potential of OLPRUVA to bring UCD patients a more convenient and cost-
> effective treatment option over current therapies. Acer would bring unique rare

disease operations and capabilities that would serve as a foundation to support the commercialization of Zevra's pipeline as it advances."

Chris Schelling, Acer Therapeutics' Chief Executive Officer and Founder, added, "Following years of product development and commitment to rare disease communities, culminating in the FDA approval of OLPRUVA, we are pleased to see our assets, pipeline and team positioned to unite under the Zevra umbrella. We look forward to working with the Zevra team to ensure a smooth transition as we work together on behalf of patients."

"This merger would support Zevra's vision of becoming a leading rare disease company bringing life-changing therapies to patients with a significant unmet need," said Christal Mickle, Zevra's interim Chief Executive Officer and Chief Development Officer. "The commercial launch of OLPRUVA in the U.S. requires a small, highly-focused commercial team, which is complementary to what we intend to build for arimoclomol, our product candidate for the treatment of Niemann-Pick disease Type C (NPC). We believe there is potential to realize significant synergies across our commercial organizations as both UCDs and NPC are metabolic related conditions and there is substantial overlap among those physicians that treat both disorders."

Financial Details and Terms of the Transactions:

The transactions, which have been approved by the Boards of Directors of both companies, are currently anticipated to close in the fourth quarter of 2023, subject to Acer stockholder approval, as well as other customary closing conditions. The merger is expected to accelerate Zevra's pathway to becoming a commercial-stage company by adding OLPRUVA, an FDA-approved asset, which is expected to add to Zevra's revenue. There are potential synergies to be realized by combining Acer's operations with Zevra's capabilities in preparation for the potential launch of arimoclomol. In addition, Zevra expects to acquire significant net operating loss (NOL) tax assets as part of this merger, providing potential tax savings against future earnings.

Under the terms of the definitive agreement, at closing, Zevra would issue 0.121 of a share of Zevra's common stock in respect of each share of Acer's common stock. In addition, Acer stockholders of record as of immediately prior to the effective time of the merger would receive non-transferable CVRs entitling the holders to receive up to $34 million in cash upon the achievement of certain commercial milestones for OLPRUVA, and up to an additional $42 million in cash upon the achievement of certain regulatory milestones for OLPRUVA and EDSIVO.

Approximately 2.96 million shares of Zevra common stock to be issued in the merger is calculated by dividing $15.0 million by the VWAP of Zevra's shares of common stock during the 20 consecutive trading days through yesterday, which

was $5.0667. The 20-day trailing VWAP value represents a discount of approximately 2% to yesterday's closing share price for Acer.

The non-transferable CVRs will entitle the Acer stockholders of record to receive up to $34 million in cash upon the achievement of certain commercial milestones for OLPRUVA, and an additional $42 million in cash upon the achievement of certain regulatory milestones for other development programs. The proposed transactions also include non-transferable CVRs for ACER-2820, Acer's early phase emetine program.

Based on the number of Zevra shares issued and outstanding as of June 30, 2023, together with the equity issued to Nantahala as part of the debt acquisition as described below, the aggregate number of shares issuable to Acer stockholders in the merger is expected to represent approximately 7.6% of the issued and outstanding common stock of Zevra following the merger.

To provide for a smooth transition and uninterrupted operations, and subject to certain conditions, Zevra has extended a bridge loan facility to Acer of up to $16.5 million to provide additional working capital to, among other things, support the commercial launch of OLPRUVA until the expected closing of the merger transaction, and to provide the $10 million payment to Acer's termination of the 2021 collaboration and license agreement by and between Acer and Relief Therapeutics, and Acer's related entry into an exclusive license agreement with Relief for the development and commercialization rights for OLPRUVA in geographical Europe.

Additionally, Zevra has purchased Acer's secured debt from Nantahala representing an aggregate of principal, accrued interest other fees and premiums of approximately $35.3 million, for a total of $28.5 million to be paid using a combination of $12 million in cash financed from Zevra's existing margin line of credit facility, $5 million in a new promissory note held by Nantahala, with a three-year maturity and bearing interest initially at 9% per annum (increasing to 12% per annum if the note remains outstanding six months after issuance), and $11.5 million in Zevra's common stock based on the 20-day trailing VWAP calculation described above, or approximately 2.27 million shares, or approximately 5.8% of the issued and outstanding common stock of Zevra following the merger.

Bryan Cave Leighton Paisner LLP served as legal advisor to Zevra and Canaccord Genuity LLC served as exclusive financial advisor to Zevra for the transactions. Pillsbury Winthrop Shaw Pittman LLP served as legal advisor to Acer, and William Blair & Company, LLC served as exclusive financial advisor to Acer.

***Potential Conflicts of Interest***

35.     The breakdown of the benefits of the deal indicates that Acer insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Acer.

36.     Company insiders currently own large, illiquid portions of Company stock, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  The Registration Statement provides the following but does not account for the merger consideration each of these amounts will be exchanged for upon the consummation of the Proposed Transaction.

| Name of Beneficial Owner | Number | Percentage |
|---|---|---|
| **5% or Greater Stockholders (excluding Executive Officers and Directors)** | | |
| Funds affiliated with TVM Capital Life Science[1] | 2,672,309 | 10.9% |
| **Named Executive Officers and Directors** | | |
| Chris Schelling[2] | 2,880,404 | 11.7% |
| Harry S. Palmin[3] | 311,787 | 1.3% |
| Adrian Quartel[4] | 87,500 | * |
| Jason Amello[4] | 57,500 | * |
| Stephen J. Aselage[5] | 559,241 | 2.3% |
| John M. Dunn[6] | 97,880 | * |
| Michelle Griffin[4] | 57,500 | * |
| All current directors and executive officers as a group (12 persons)[7] | 4,613,707 | 18.0% |

37.     Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, some of which may be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  The Registration Statement provides the following but does not account for the merger consideration such equity awards will be exchanged for.

| Name | Vested Acer Stock Options (#) | Unvested Acer Stock Options (#) | Outstanding Acer Stock Options (#) | Weighted Average Exercise Price of Outstanding Acer Stock Options ($) |
|---|---|---|---|---|
| *Non-Employee Directors* | | | | |
| Jason Amello | 57,500 | 20,000 | 77,500 | $ 5.82 |
| Stephen J. Aselage | 75,500 | 20,000 | 95,500 | $ 4.80 |
| John M. Dunn | 70,500 | 20,000 | 90,500 | $ 4.93 |
| Michelle Griffin | 57,500 | 20,000 | 77,500 | $ 5.82 |
| *Executive Officers* | | | | |
| Chris Schelling | 162,250 | 46,250 | 208,500 | $ 13.16 |
| Jefferson E. Davis | 75,000 | 85,000 | 160,000 | $ 3.21 |
| Tanya Hayden | 29,375 | 68,125 | 97,500 | $ 2.16 |
| Donald R. Joseph | 173,875 | 68,125 | 242,000 | $ 9.28 |
| John M. Klopp | 107,875 | 53,125 | 161,000 | $ 6.74 |
| Harry S. Palmin | 181,475 | 68,125 | 249,600 | $ 8.70 |
| Bernie Paul | 70,625 | 49,375 | 120,000 | $ 6.09 |
| Adrian Quartel | 75,000 | 155,000 | 230,000 | $ 2.44 |

39.     Moreover, certain employment agreements with certain Acer executives entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash (1)($) | Equity (2)($) | Perquisites / Benefits (3)($) | Total ($) |
|---|---|---|---|---|
| Chris Schelling | 1,014,800 | — | 27,400 | 1,042,200 |
| Harry S. Palmin | 702,320 | — | 27,400 | 729,720 |
| Adrian Quartel | 595,000 | — | 27,400 | 622,400 |

40.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41.     Thus, while the Proposed Transaction is not in the best interests of Acer, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Registration Statement**

42.     On September 29, 2023, as amended on October 6, 2023, the Acer Board and Zevra caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

_Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction_

43.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

    a.     Adequate information as to why the Board agreed to a merger consideration made up of a majority of a non-guaranteed CVR payment;

    b.     Adequate information as to whether a committee of disinterested directors was formed to evaluate the Proposed Transaction. If so, the identity of the directors who sat on the committee and what powers the committee had. If not, the reasoning for failing to create such a committee;

    c.     Adequate information as to why the Board agreed to a Proposed Transaction that did not contain a collar mechanism.

d.      Whether the confidentiality agreements entered into by the Company with Zevra differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

e.      All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Zevra, would fall away;

f.      Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Acer and Zevra Financial Projections*

44.     The Registration Statement fails to provide material information concerning financial projections for Acer and Zevra provided by Acer management to the Board and William Blair, and relied upon by William Blair in its analyses.

45.     Notably, the Registration Statement further reveals that, as part of its analyses, William Blair reviewed "certain internal business, operating and financial information and forecasts of Acer for the fiscal years ending December 31, 2023 through December 31, 2038 (the "Forecasts")".

46.     The Registration Statement should have, but fails to provide, certain information in the projections that Acer management provided to the Board and William Blair.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.

What they cannot hope to do is replicate management's inside view of the company's prospects."

*In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

47.     With regard to *Management Plan 1* set of Projections, the Registration Statement fails to disclose material line items, including the following:

    a.  Adjusted EBITDA, including the underlying inputs, metrics, and assumptions used to determine the same, including specifically: net income (loss) before interest, taxes, depreciation and amortization, and stock-based compensation

48.     With regard to *Management Plan 2* set of Projections, the Registration Statement fails to disclose material line items, including the following:

    a.  Adjusted EBITDA, including the underlying inputs, metrics, and assumptions used to determine the same, including specifically: net income (loss) before interest, taxes, depreciation and amortization, and stock-based compensation

49.     The Registration Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

50.     The Registration Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

51.     The Registration Statement also fails to disclose any material projection data for Zevra, preventing Plaintiff from being fully informed as to the value of the merger consideration.

52.     Specifically, the Registration Statement's failure to disclose substantive material projection data prevents Plaintiff from being fully informed as to the nature of the Proposed Transaction and preventing him from making a fully informed decision on whether to vote in favor of the same.

53.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

54.     Without complete and accurate projection data for Acer or Zevra being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the value of the merger consideration, the accuracy of William Blair's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by William Blair*

55.     In the Registration Statement, William Blair describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

56.     With respect to the *Analysis of Consideration*, the Registration Statement fails to disclose:

   a.   The specific inputs and assumptions used to determine the utilized discount rate of 21.5%;

   b.   Acer's weighted cost of capital utilized, and the specific inputs and assumptions used to determine the same;

- 16 -

     c.   The specific inputs and assumptions used to determine the various "Probability of Success" percentages for each CVR Payment Milestone.

57.    With respect to the *Acer Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

     a.   The specific inputs and assumptions used to determine the utilized perpetuity growth rate of negative 80.0%;

     b.   The specific inputs and assumptions used to determine the utilized effective tax rate of 26.0%;

     c.   The specific inputs and assumptions used to determine the utilized discount rate range of 20.0% to 23.00%;

     d.   Acer's weighted cost of capital utilized, and the specific inputs and assumptions used to determine the same;

     e.   The specific inputs and assumptions used to determine the discount range to the closing price of stock on August 28, 2023 of 25% - 75% as applied to each assumed capital raise for Management Case 1 and Management Case 2, respectively, and the specific discount rates applied to each management case;

     f.   The terminal value for Acer calculated;

     g.   Acer's net debt as of July 31, 2023;

     h.   The upfront and buy-out payments to Relief Therapeutics; and

     i.   Acer's total diluted shares outstanding as of August 28, 2023 (as adjusted to take into account the impact of dilutive securities based on the treasury stock method at the implied share price).

58.     With respect to the *Acer M&A Premiums Paid Analysis*, the Registration Statement fails to disclose:

> a.   The specific acquisitions and their premia analyzed.

59.     With respect to the *Zevra Selected Public Companies Analysis*, the Registration Statement fails to disclose:

> a.   The specific EV/CY2026E Revenue multiple reference range utilized to determine the Implied Zevra Multiple, and its inputs and assumptions.

60.     With respect to the *Zevra Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose:

> a.   The specific date on which each Selected Precedent Transaction closed;
>
> b.   The aggregate value of each Selected Precedent Transaction;
>
> c.   The specific EV/CY Revenue +3 multiple reference range utilized to determine the Upfront Consideration Implied Zevra Multiple, and its inputs and assumptions; and
>
> d.   The specific EV/CY Revenue +3 multiple reference range utilized to determine the Upfront Consideration + CVR Implied Zevra Multiple, and its inputs and assumptions.

61.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

62.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's

determination that the Proposed Transaction is in his best interests as a public Acer stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

63.     Plaintiff repeats all previous allegations as if set forth in full herein.

64.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

65.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

66.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any

material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

67.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

68.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

69.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

70.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

#### (Against all Individual Defendants)

71.     Plaintiff repeats all previous allegations as if set forth in full herein.

72.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

73.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

74.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Acer's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the

Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

75.     The Individual Defendants acted as controlling persons of Acer within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Acer to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Acer and all of its employees.  As alleged above, Acer is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: October 12, 2023

**BRODSKY & SMITH**

By: _Evan J. Smith_

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*

- 23 -